O

# United States District Court
# Central District of California

| | |
|---|---|
| ROBERT JAFFEE and BARBARA JAFFEE, | Case № 2:15-CV-00113-ODW (ASx) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [58]** |
| v. | |
| RUDOLPH CARRYL aka RUDY CARRYL, *et al.* | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiffs Robert Jaffee and Barbara Jaffee are the victims of a financial scam allegedly perpetrated by Defendant Rudolph Carryl. In addition to suing Carryl, however, Plaintiffs have also sued multiple other defendants that are allegedly in possession of their money, including Defendants Oppenheimer & Co., Inc. and Freedom Investments, Inc. (collectively "Oppenheimer Defendants"). Plaintiffs assert claims against Oppenheimer Defendants for conversion and money had and received, and seek to impose a constructive trust on their funds they received from Carryl. On March 31, 2016, Defendants moved to dismiss Plaintiffs' First Amended Complaint.

For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.[1]  (ECF No. 58.)

## II.   FACTUAL BACKGROUND

Plaintiffs are a married couple residing in Los Angeles County.  (First Am. Compl. ("FAC") ¶ 1.)  They were looking for a new investment advisor to handle their investment portfolio and were introduced to Rudolph Carryl of Carryl Capital Management, LLC ("CCM").   (*Id.* ¶ 8.)   After discussing Carryl's investment philosophies over several meetings, Plaintiffs transferred their portfolio to him.  (*Id.*)  In January 2012, Carryl solicited from Plaintiffs a "Special Situation Investment" for a pediatric healthcare facility that Carryl promised would return a profit of at least thirty percent by November 2012.  (*Id.* ¶ 9.)  Based on Carryl's representations, Plaintiffs transferred a total of $1.25 million to CCM's bank account.  (*Id.* ¶ 10.)  In September 2012, Carryl again solicited money from Plaintiffs for a second investment opportunity that he promised would return a profit of at least ten percent by December 2012.  (*Id.* ¶ 11.)  Based on this representation, Plaintiffs wired an additional $200,000 to CCM.  (*Id.* ¶¶ 12, 37.)  On December 10, 2012, Plaintiffs received a notice from Carryl stating that their initial $1.25 million investment, plus a 32.1% gain—totaling $1,651,250.00—would be wired back to Plaintiffs' bank account on December 24, 2012.  (*Id.* ¶ 13.)  Plaintiffs did not receive the funds on December 24, 2012, and to this date Carryl still has not returned Plaintiffs' money.  (*Id.* ¶¶ 14–15.)  Plaintiffs allege that Carryl instead disbursed their money among the numerous defendants in this action, including the Oppenheimer Defendants.  (*Id.* ¶¶ 17, 43–44.)

On January 11, 2016, Plaintiffs filed a First Amended Complaint, which asserts three claims for relief against Defendants: conversion, money had and received, and imposition of a constructive trust.   (*Id.* ¶¶ 42–52.)   Plaintiffs' claims against Defendants are based on Carryl's alleged misappropriation of Plaintiffs' funds and the

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.

delivery of those funds to the Oppenheimer Defendants.  (*Id.* ¶ 44.)  On March 31, 2016, the Oppenheimer Defendants moved to dismiss Plaintiffs' First Amended Complaint.  (ECF No. 58.)  On May 2, 2016, Plaintiffs filed an Opposition to Defendants' Motion.[2]  (ECF No. 71.)  On May 9, 2016, the Oppenheimer Defendants filed their Reply.  (ECF No. 77.)  That Motion to Dismiss is now before this Court.

## III.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a dismissal motion, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim.  *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003).  The factual "allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.  A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001).  But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

As a general rule, a court should freely give leave to amend a complaint that has been dismissed.  Fed. R. Civ. P. 15(a).  But a court may deny leave to amend when

---

[2] Although Plaintiffs' Opposition was not timely filed, the Court nevertheless exercises its discretion to consider the Opposition.  (ECF No. 74.)

"the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.1986); *see Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## IV.   DISCUSSION

The Oppenheimer Defendants argue that they are not liable for conversion because they were simply bailees of the money they received from Carryl.  (Mot. 3–5.)  They also argue that the claim for money had and received does not exist without the predicate conversion claim, and also that Plaintiffs have failed to plead sufficient facts to state a claim for money had and received.  (Mot. 5–6.)  Finally, the Oppenheimer Defendants argue that the imposition of a constructive trust is a remedy, not a claim, and thus should also be dismissed.  (Mot. 6.)  For the reasons discussed below, the Court grants in part and denies in part the Motion.

**A.     Conversion**

The Oppenheimer Defendants argue that they are merely bailees and thus not liable for conversion.  "A bailment is generally defined as 'the delivery of a thing to another for special object or purpose . . . to conform to the objects or purposes of the delivery which may be as various as the transactions of men.'" *Windeler v. Scheers Jewelers*, 8 Cal. App. 3d 844, 850 (1970); *United States v. Alcaraz-Garcia*, 79 F.3d 769, 774 n.11 (9th Cir. 1996) ("A bailment is the deposit of personal property with another, usually for a particular purpose.").  The bailor is the person who owns the thing or object; the bailee is the person entrusted with possession of the object.  *See Windeler*, 8 Cal. App. 3d at 850; *Alcaraz-Garcia*, 79 F.3d at 774 n.11.  "A bailee who receives bailed property from a thief, without notice of the true owner's claim and returns the property to the bailor according to the terms of the bailment, is not liable for conversion." *Software Design & Application v. Hoefer & Arnett*, 49 Cal. App. 4th 472, 485 (1996); *see also Simonian v. Patterson*, 27 Cal. App. 4th 773, 782 (1994) ("[N]o conversion occurs when a mere bailee, whether common carrier, or otherwise,

1   . . . receives property from one not rightfully entitled to possession, and, acting as a

2   mere conduit, delivers it in pursuance of the bailment, if this is done before notice of

3   the rights of the real owner."  (internal brackets and quotation marks omitted)).

4       Plaintiffs' sole allegation in the First Amended Complaint with respect to the

5   Oppenheimer Defendants is that they have "received funds from [CCM's bank]

6   account after the two wire transfers from Plaintiffs."  (FAC ¶ 17; *see also id.* ¶ 44.)

7   While these allegations may be consistent with a bailment relationship, they do not

8   *conclusively* establish a bailment relationship.[3]  Moreover, the Court notes that bailees

9   are generally not liable only where they are no longer in possession of the bailed funds

10  pursuant to the terms of the bailment, *Software Design & Application*, 49 Cal. App.

11  4th at 485; *Simonian*, 27 Cal. App. 4th at 782, and there is no indication here that the

12  Oppenheimer Defendants are no longer in possession of the funds received from

13  Carryl.  *See also Messerall v. Fulwider*, 199 Cal. App. 3d 1324, 1333 (1988) (bailee

14  liable for conversion where true owner of the bailed property provided "compelling

15  proof" of ownership of the property, yet bailee refused to give the property to the true

16  owner).  Thus, the Court cannot determine as a matter of law that Defendants are

17  merely non-liable bailees.

18  **B.    Claim for Money Had and Received**

19      Defendants argue that Plaintiffs' claim for money had and received should be

20  dismissed because 1) it depends wholly on the existence of a predicate conversion

21  claim, which they argued should be dismissed, and 2) the Plaintiffs fail to properly

22  allege the claim.  Because the Court declines to dismiss the conversion claim, the

23  Court addresses only the latter argument.

24      A cause of action for money had and received is stated if Plaintiffs plead: "(1) a

25  statement of indebtedness of a certain sum, (2) the consideration made by the plaintiff,

26

27  [3] The Oppenheimer Defendants note in their Motion that the transfer of money to them was actually
    a deposit by Carryl into his own brokerage account at Oppenheimer.  (Mot. 2–3.)  However, the

28  nature of the money transfer is not described in the First Amended Complaint, and thus the Court
    cannot consider such facts on a Motion to Dismiss.

5

and (3) nonpayment of the debt." *First Interstate Bank v. Cal.*, 197 Cal. App. 3d 627, 634 (1987).  Furthermore, to be sufficiently pleaded, a common count "must state not only the indebtedness of the defendant but also directly or impliedly the relationship or the express or implied legal principle upon which a promise to plaintiff is predicated." *Vaughn v. Certified Life Ins. Co.*, 238 Cal. App. 2d 177, 181 (1965). Here, Plaintiffs only allege that their funds were wired into Carryl's bank account and that Carryl then transferred those funds to the Oppenheimer Defendants.  (FAC ¶¶ 10, 12, 44.)  The Court finds that Plaintiffs have not stated sufficient facts in their FAC to establish the legal principle upon which Defendants' indebtedness to Plaintiffs is predicated.  Thus, Plaintiffs' second claim for money had and received is dismissed with leave to amend.

## C.     Imposition of Constructive Trust

To properly allege the remedy of the imposition of a constructive trust, a pleading requires: (1) facts constituting the underlying cause of action, and (2) specific identifiable property to which the defendant has title.  *Michaelian v. State Comp. Ins. Fund*, 50 Cal. App. 4th 1093, 1114 (1996).  Notably, the imposition of a constructive trust "is not an independent cause of action but merely a type of remedy for some categories of underlying wrong." *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1023 n.3.

Here, Plaintiffs' "claim" for imposition of a constructive trust fails for two reasons.  First, it is not a "claim," but simply a remedy.  Second, Plaintiffs have not alleged the "specific identifiable property" to be subject to the trust.  All Plaintiffs allege is that the Oppenheimer Defendants received some amount of money from Carryl, and that such money belongs to Plaintiffs.  (FAC ¶ 52.)  This is insufficient; Plaintiffs must identify particular *res* of funds in the Oppenheimer Defendants' possession in order to impose a constructive trust on those funds.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1150 (2003) ("The recovery requested in this case cannot be traced to any particular funds in [defendant's]

possession and therefore is not the proper subject of a constructive trust.").  However, the Court grants Plaintiffs leave to amend to plead this as a remedy, and to identify the particular funds that are the subject of a constructive trust.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss.  (ECF No. 58.)  Plaintiffs shall file a Second Amended Complaint within 14 days that cures the deficiencies noted in this Order.

**IT IS SO ORDERED.**

June 27, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**